IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS,<br>1800 M Street, NW, Suite 900 North<br>Washington, D.C. 20036<br><br>   Plaintiff,<br><br> v.<br><br>MICHAEL S. REGAN, in his official capacity as Administrator, U.S. Environmental Protection Agency<br>1200 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20460<br><br>and<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY,<br>1200 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20460<br><br>   Defendants. | No. 24-cv-2361 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff American Fuel & Petrochemical Manufacturers ("AFPM") ("Plaintiff") brings this action to compel Defendants, the U.S. Environmental Protection Agency and the Honorable Michael S. Regan, in his official capacity as Administrator of the U.S. Environmental Protection Agency (collectively "EPA") ("Defendants"), to partially waive Renewable Fuel Standard ("RFS") program requirements for cellulosic biofuel for 2023, and to make cellulosic biofuel credits available for that year, as required by Clean Air Act ("CAA") Section 211(o), 42 U.S.C. § 7545(o). EPA has a nondiscretionary duty to take those actions when projected annual cellulosic biofuel volumes exceed the actual volumes produced for that year. 42 U.S.C. § 7545(o)(7)(D)(i)-(ii). Plaintiff hereby seeks declaratory and

injunctive relief both to confirm EPA's duties under the statute generally and to provide all necessary relief regarding EPA's specific failure to discharge these duties for the 2023 RFS compliance year. In support, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604(a)(2), which authorizes citizen suits concerning EPA's failure to perform a nondiscretionary duty or act required by the CAA. Section 7604(a) grants this Court jurisdiction to order EPA to perform such duty. In addition, this Court has jurisdiction over this action and over the parties pursuant to 28 U.S.C. §§ 1331 and 1361. The relief requested is authorized under 42 U.S.C. § 7604 and 28 U.S.C. §§ 2201, 2202, and 1361.

2. Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) because Defendants are principally located in the District of Columbia; a substantial part, if not all, of the events or omissions giving rise to the claims asserted herein arose in this district; and Plaintiff resides in this district.

## PARTIES

3. Plaintiff AFPM is a national trade association whose members comprise most of U.S. domestic refining and petrochemical manufacturing capacity and who refine and manufacture most of the U.S. supply of gasoline, diesel, jet fuel, and home heating oil.

4. Plaintiff represents its members in judicial, legislative, and administrative forums. In particular, Plaintiff routinely comments on EPA rulemaking proposals to implement the RFS program, and has participated in litigation involving many of EPA's RFS regulations since the program's inception.

5. AFPM is a "person[s]" as defined in the CAA. *See* 42 U.S.C. § 7602(e).

6. Defendant Michael Regan is the Administrator of the EPA. The Administrator is

charged with implementation and enforcement of the CAA, including the CAA's nondiscretionary duties to waive cellulosic biofuel volumes and make cellulosic biofuel credits available when the statutory criteria are met.

7. Defendant EPA is an executive agency of the federal government charged with implementing the CAA's RFS program.

## STATUTORY AND REGULATORY BACKGROUND OF THE RFS

8. The RFS program requires the use of renewable fuel in gasoline sold or introduced into commerce in the United States.

9. Congress created four different categories of renewable fuel:

   a. Biomass-based diesel is a diesel-fuel substitute, derived from animal wastes and similar sources. 42 U.S.C. § 7545(o)(1)(D).

   b. Cellulosic biofuel is derived from cellulose, hemicellulose, or lignin derived from renewable biomass. *Id.* § 7545(o)(1)(E).

   c. Advanced biofuel comprises renewable fuels, "other than ethanol derived from corn starch," including biomass-based diesel, cellulosic biofuel, and sugar-based ethanol. *Id.* § 7545(o)(1)(B).

   d. Renewable fuel comprises "fuel that is produced from renewable biomass and that is used to replace or reduce the quantity of fossil fuel present in a transportation fuel." *Id.* § 7545(o)(1)(J). This category includes each of the fuel types described above, plus other fuels such as corn-starch ethanol, and can also be described as "total renewable fuel."

10. Through 2022 (through 2012 in the case of biomass-based diesel), the statute prescribed annual applicable volumes for these types of renewable fuel. *Id.* § 7545(o)(2)(B)(i).

11. For 2023 and beyond, however, *EPA* determines applicable volumes for each category of renewable fuel based on a review of the implementation of the RFS program and several statutory criteria. *Id*. § 7545(o)(2)(B)(ii).

12. EPA uses these volumes to calculate percentages that apply to the entities required to comply with the RFS—"obligated parties." *Id.* § 7545(o)(3)(B)(ii)(II).

13. EPA has determined that refiners of gasoline and diesel, including Plaintiff's refining members, are obligated parties subject to the RFS program. 40 C.F.R. § 80.1406.

14. The RFS requires obligated parties annually to satisfy Renewable Volume Obligations ("RVOs"), measured in gallons of renewable fuel, including an RVO for cellulosic biofuel. *Id.*

15. Each obligated party's RVOs are based on EPA's calculation of annual percentage standards for the four renewable fuel types for each compliance year and how much non-renewable gasoline and diesel they produce or import in a given year. *Id.* §§ 80.1405, 80.1407.

16. Under current RFS regulations, after the conclusion of each year, obligated parties must calculate their RVOs by multiplying their production and importation of non-renewable gasoline and diesel for the past year by the applicable percentage for each category of renewable fuel. *Id.* § 80.1407.

17. Compliance with the RFS therefore occurs after each production and importation year ends, when the actual amount of non-renewable gasoline and diesel produced or imported is known. Obligated parties must submit annual compliance reports by "March 31 of the subsequent calendar year" or later depending on the effective date of a final rule establishing relevant standards. *Id.* § 80.1451(f)(1)(i)(A).

18. Each obligated party demonstrates compliance with its RVOs by retiring a sufficient number of Renewable Identification Numbers ("RINs") for each of the four categories of renewable fuels. *See id.* § 80.1427.

19. RINs are unique numbers "generated to represent a volume of renewable fuel." 40 C.F.R. § 80.2. RINs are generated through the *production* of qualifying renewable fuel. In most cases an obligated party obtains RINs by either purchasing renewable fuel for blending (thereby acquiring "attached" RINs) or by acquiring RINs (*e.g.*, purchasing RINs from another party) after they have been "separated" from renewable fuel. Separation of RINs occurs under defined circumstances: where renewable fuel is owned by an obligated party, blended into gasoline or diesel, or exported. *See* 42 U.S.C. §§ 7545(o)(2)(A)(ii)(II)(cc), 7545(o)(2)(A)(iii)(II)(bb); 40 C.F.R. § 80.1429.

20. If an obligated party fails to demonstrate compliance with its annual obligations for a given year, it may face substantial daily penalties. *See* 42 U.S.C. § 7545(d)(1); 40 C.F.R. § 80.1463.

21. EPA established the EPA Moderated Transaction System ("EMTS") to account for the production and importation of renewable fuel and all subsequent transfers of RIN ownership. 40 C.F.R. § 80.1452. The EMTS serves as a publicly-accessible database from which the quantity of available RINs in any given year can be determined.

## STATUTORY AND REGULATORY BACKGROUND FOR THE CELLULOSIC BIOFUEL WAIVER

22. The RFS is a forward-looking program. EPA is required, in all cases, to determine applicable volumes of renewable fuel prior to the year or years in which they apply. 42 U.S.C. §§ 7545(o)(2)(B)(ii), 7545(o)(3)(B)(i). To do so, EPA must project how much transportation and renewable fuel will be produced and introduced into commerce. 42 U.S.C.

§§ 7545(o)(2)(B)(ii)(III), 7545(o)(3)(A).

23. These projections are not always accurate. Difficulties in producing renewable fuel as well as unexpected events (*e.g.*, COVID-19) can have a substantial impact on the amount of transportation and renewable fuel that is produced, imported and used in any one year.

24. Congress provided EPA certain waiver authority to adjust RFS requirements when applicable volumes exceed actual conditions experienced in the marketplace for fuels.

25. For example, EPA has "general" waiver authority *permitting* EPA to reduce (waive) the national quantity of renewable fuel if certain conditions are met. 42 U.S.C. § 7545(o)(7)(A).

26. EPA also has "cellulosic" waiver authority *requiring* EPA to reduce (waive) the applicable volume of cellulosic biofuel if certain conditions are met. *Id*. § 7545(o)(7)(D).

27. The cellulosic waiver provision states:

> For any year for which the projected volume of cellulosic biofuel production is less than the minimum applicable volume established under [42 U.S.C. § 7545(o)(2)(B)], as determined by the Administrator based on the estimate provided under [42 U.S.C. § 7545(o)(3)(A)], not later than November 30 of the preceding calendar year, the Administrator *shall reduce* the applicable volume of cellulosic biofuel required under [42 U.S.C. § 7545(o)(2)(B)] to the projected volume [of cellulosic biofuel] available during that calendar year.

*Id.* § 7545(o)(7)(D)(i) (emphasis added).

28. When the cellulosic waiver applies, EPA must also "make available for sale cellulosic biofuel credits at the higher of $0.25 per gallon or the amount by which $3.00 per gallon exceeds the average wholesale price of a gallon of gasoline in the United States. Such

amounts shall be adjusted for inflation by the Administrator for years after 2008." *Id.* § 7545(o)(7)(D)(ii). These credits provide an alternative means of compliance for obligated parties.

29. From 2010 to 2022, EPA was required to use the cellulosic biofuel waiver in *each and every* year because projected production of cellulosic biofuel fell short of the applicable volume specified in the statute. *Renewable Fuel Standard (RFS) Program: RFS Annual Rules*, 87 Fed. Reg. 39,600, 39,606 (July 11, 2022).

30. In 2022, this meant waiving 96% of the statutorily-prescribed applicable volume. *Id.* at 39,601, Table I-1.

31. For 2023 and later years, because the statute prescribes no applicable volumes EPA must determine the applicable volume of cellulosic biofuel that will apply before a cellulosic biofuel waiver can apply. 42 U.S.C. §§ 7545(o)(2)(B)(ii), (o)(7)(D)(i).

*RFS Regulations for 2023*

32. EPA published a notice of proposed rulemaking to establish the 2023 RFS on December 30, 2022, more than a year after the statutory deadline for EPA to promulgate a *final* rule for RFS standards that apply in 2023. *See Renewable Fuel Standard (RFS) Program: Standards for 2023-2025 and Other Changes*, 87 Fed. Reg. 80,582 (Dec. 30, 2022); 42 U.S.C. § 7545(o)(2)(B)(ii).

33. For the 2023 compliance year, EPA proposed to set applicable cellulosic biofuel volumes (which it termed "volume targets") at 720 million RINs (with each RIN equal to one ethanol-equivalent gallon of renewable fuel). 87 Fed. Reg. at 80,584, Table I.A.1-1.

34. EPA explained that it was setting cellulosic biofuel standards on the basis of the statutory factors contained in Section 211(o)(2)(B)(ii), specifically the criteria for establishing

7

applicable volumes for "[o]ther calendar years." *Id.* at 80,590.

35. Because EPA did not propose to use its cellulosic waiver authority to establish applicable volumes for 2023, EPA also determined that cellulosic biofuel credits would not be available for obligated parties to purchase for compliance. *Id.*

36. EPA published the final RFS rule for 2023 over 20 months after the statutory deadline. *See Renewable Fuel Standard (RFS) Program: Standards for 2023-2025 and Other Changes*, 88 Fed. Reg. 44,468 (July 12, 2023) ("Final Rule").

37. The Final Rule set an applicable volume for cellulosic biofuel of 840 million RINs for 2023. *Id.* at 44,470, Table I.A.1-1. EPA then calculated the 2023 applicable percentage for cellulosic biofuel (0.48%) based on this amount. *Id.* at 44,471, Table I.A.2-1.

38. In the Final Rule, EPA stated that, as required by the statute, 42 U.S.C. § 7545(o)(2)(B)(iv), it was "setting the volume requirements [for cellulosic biofuel] such that the *mandatory waiver* of the cellulosic volume is not anticipated to be triggered in [2023 to 2025]." *Id.* at 44,477 (emphasis added).

39. EPA did not make cellulosic biofuel credits available. *Id.* at 44,479.

40. EPA represented that the cellulosic biofuel volume requirements were based *solely* on estimates of the total amount of cellulosic biofuel that would be produced and used in the United States in 2023-2025. *Id.* at 44,482.

41. EPA also acknowledged that "[t]he cellulosic biofuel waiver applies when the projected volume of cellulosic biofuel production is less than the minimum applicable volume. CAA section 211(o)(7)(D)." *Renewable Fuel Standard (RFS) Program: Standards for 2023-2025 and Other Changes, Response to Comments* ("RTC") at 84, EPA-HQ-OAR-2021-0427-1114, https://www.regulations.gov/document/EPA-HQ-OAR-2021-0427-1114.

42. Because EPA did not publish the Final Rule until July 2023, EPA imposed a retroactive obligation on obligated parties for over half of the 2023 RFS compliance year (January 1, 2023 to July 12, 2023).

*AFPM Requests Partial Waiver of 2023 Cellulosic Biofuel Standard*

43. EMTS data made clear that there would be a significant cellulosic biofuel shortfall. Thus, on December 22, 2023, AFPM petitioned the EPA Administrator to exercise the mandatory cellulosic biofuel waiver under Section 211(o)(7)(D) and waive a portion of the RFS standards for cellulosic biofuel for the 2023 compliance year. *See* AFPM, *Petition for Partial Waiver of 2023 Cellulosic Biofuel Volumetric Requirements, Dec. 22, 2023* ("December 2023 Petition"), available at https://www.epa.gov/system/files/documents/2024-03/afpm-2023-volume-waiver-2023-12-22.pdf.

44. AFPM explained that the applicable volume of cellulosic biofuel for 2023 EPA had determined (*i.e.*, 840 million RINs, 88 Fed. Reg. at 44,470) was approximately 81 million ethanol-equivalent gallons *higher* than the actual projected production of cellulosic biofuel in 2023.

45. In the alternative, AFPM requested that EPA exercise its general waiver authorities in 42 U.S.C. § 7545(o)(7)(A) to waive RFS standards on the basis of an "inadequate domestic supply" and avoiding conditions that would "severely harm the economy . . . of . . . a region." December 2023 Petition at 10.

46. On March 4, 2024, AFPM submitted to EPA an update to its petition for a partial waiver of the 2023 cellulosic biofuel standards. *See AFPM's Petition for Partial Waiver of the 2023 Cellulosic Biofuel Volumetric Requirements – Update* (Mar. 4, 2024) ("March 2024 Update" or "Update"), available at https://www.epa.gov/system/files/documents/2024-03/afpm-

9

2023-volume-waiver-2024-03-04.pdf. This Update used the most recent data released by EPA concerning cellulosic biofuel RIN generation in 2023. The Update reiterated AFPM's request that EPA use its cellulosic biofuel waiver authority to lower cellulosic biofuel standards for 2023 and to make cellulosic biofuel credits available for purchase. *Id*. at 2.

47. EPA "denied [AFPM's] petition … for a partial waiver of the 2023 [RFS] cellulosic biofuel standard," and provided notice of its denial in the Federal Register on March 26, 2024. *Notice of Denial of Petition for Partial Waiver of 2023 Cellulosic Biofuel Standard Under the Renewable Fuel Standard Program*, 89 Fed. Reg. 20,961-62 (Mar. 26, 2024).

48. EPA accompanied its denial notice of AFPM's December 2023 Petition and March 2024 Update with a document described as the "AFPM Petition Denial Action." *Id.* at 20,962 (available at https://www.epa.gov/system/files/documents/2024-03/afpm-part-waiver-denial-cellulosic-biofuel-stndrd-2024-03.pdf).

49. The AFPM Petition Denial Action stated that "[t]he statute does not specify that it authorizes petitions to waive cellulosic biofuel volumes under CAA section 211(o)(7)(D). Accordingly, [EPA does] not consider AFPM's request to waive volumes under CAA section 211(o)(7)(D) to be properly before the Agency. Accordingly, to the extent the AFPM Petition raises issues relating solely to CAA section 211(o)(7)(D), we do not address those issues in this document." AFPM Petition Denial Action at 4.

50. EPA characterized its denial of AFPM's waiver request as a "final action" that was "'nationally applicable' within the meaning of CAA section 307(b)(1)." *Id.* at 20,962. And EPA specified that "petitions for judicial review of this action must be filed in the United States Court of Appeals for the District of Columbia by May 28, 2024." *Id*.

51. Consistent with EPA's characterization of the denial as a nationally applicable

10

final agency action, on May 28, 2024, AFPM filed a petition for review of that action. *Am. Fuel & Petrochemical Manufacturers v. EPA*, No. 24-1163 (D.C. Cir.).

52. EPA's denial of AFPM's petition refused to consider, and therefore did not discharge, EPA's nondiscretionary duty to invoke the cellulosic waiver provision in Section 211(o)(7)(D).

## INJURIES RESULTING FROM EPA'S FAILURE TO ACT

53. As refiners, Plaintiff AFPM's members are obligated parties under the RFS program, and are directly regulated by EPA regulations implementing that program, as described in detail above.

54. Plaintiff's members were obligated to comply with the partially-retroactive 2023 RFS applicable percentage standard for cellulosic biofuel. This required Plaintiff's members to retire a sufficient number of RINs to meet their compliance obligations for cellulosic biofuel either by purchasing and blending liquid cellulosic biofuel into transportation fuel or by acquiring and retiring RINs from other entities. 40 C.F.R. §§ 80.1427, 80.1429. Due to the shortfall in cellulosic biofuel RINs, some of Plaintiff's members may also have had to carry forward a deficit into the 2024 compliance year.

55. Due to the nature of cellulosic biofuel, for all practical purposes Plaintiff's members must purchase from other parties the vast majority of cellulosic biofuel RINs that they need to demonstrate compliance.

56. When less cellulosic biofuel is produced than EPA projects, fewer cellulosic biofuel RINs may be available for purchase than are required for obligated parties to demonstrate compliance. Under basic principles of supply and demand, the cellulosic biofuel RINs that are available then increase in price. *See, e.g.*, December 2023 Petition at 4.

57. Because EPA did not promulgate the Final Rule until the 2023 compliance year

11

was halfway over, Plaintiff's members could not know how many cellulosic biofuel RINs they would need to acquire in advance of the imposition of these requirements, hindering their ability to plan an economic RIN-acquisition strategy.

58. In the December 2023 Petition, AFPM estimated that because cellulosic biofuel RINs were being priced at approximately $3 per RIN, an 81-million-gallon shortfall in the production of cellulosic biofuel in 2023 represents a compliance cost of approximately $237 million (81 million x $3 per RIN). December 2023 Petition at 2.

59. In its March 2024 Update, AFPM provided data estimating an even higher shortfall in cellulosic biofuel RINs.

60. Because EPA did not exercise its cellulosic waiver authority when determining applicable volumes for 2023, EPA also did not make cellulosic biofuel credits available. Cellulosic biofuel credits would have moderated cellulosic biofuel RIN prices and facilitated obligated parties' compliance. Thus, obligated parties were denied access to credits offered for sale at a fixed price, and instead were forced to pay the market price in a RIN-scarce year.

61. While the statute allows obligated parties to carry forward a deficit for one year, obligated parties must satisfy that debt *and* fully comply in the next year. 42 U.S.C. § 7545(o)(5)(D).

62. Obligated parties unable to make a complete compliance demonstration due to EPA's refusal to adjust applicable cellulosic biofuel volumes and make available cellulosic biofuel credits risk noncompliance through no fault of their own.

63. Plaintiff's members therefore have suffered and continue to suffer economic and other injuries as a result of EPA's failure to consider and grant a waiver of the cellulosic biofuel applicable volumes for 2023, to lower applicable cellulosic biofuel percentage standards, and to

make available cellulosic biofuel credits.

64. Plaintiff's members also have suffered injury by having to adjust their RIN acquisition and retirement strategies. RINs "may only be used to demonstrate compliance with the RVOs for the calendar year in which they were generated or the following calendar year." 40 C.F.R. § 80.1427(a)(6). In other words, RINs expire.

65. These injuries are the direct result of EPA's failure to comply with its non-discretionary duty to waive the applicable volume of cellulosic biofuel "[f]or any calendar year for which the projected volume of cellulosic biofuel production is less than the minimum applicable volume established under paragraph (2)(B) . . ." and to adhere to the statutory schedule for promulgating standards in the years after 2022. 42 U.S.C. §§ 7545(o)(7)(D), 7545(o)(2)(B)(ii).

66. Granting the relief requested in this lawsuit would redress these injuries.

67. The interests Plaintiff seeks to protect are germane to its organizational purposes. A primary purpose of the Plaintiff is to represent and protect the interests of the regulated industry before EPA and other government regulators.

68. Plaintiff's members would have standing to sue in their own right as obligated parties under the RFS program.

69. Neither the claim asserted nor the relief requested requires individual member company participation.

## NOTICE

70. Sixty days prior to bringing an action "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator," 42 U.S.C. § 7604(a)(2), the plaintiff must give notice to the Administrator, *id.* § 7604(b)(2).

71. On May 28, 2024, AFPM provided notice of its intent to sue Defendants pursuant to Section 304(b)(2) of the CAA, 42 U.S.C. § 7604(b)(2), and 40 C.F.R. part 54, to enforce EPA's nondiscretionary duties under Clean Air Act section 211(o)(7)(D), 42 U.S.C. § 7545(o)(7)(D), to waive cellulosic biofuel standards for 2023, and to "make available for sale" cellulosic biofuel credits. A copy of this letter is attached hereto as Exhibit A.

72. EPA received Plaintiff's notice letter, as demonstrated by the fact that EPA posted copies of the letter on its webpage entitled "Notices of Intent to Sue the U.S. Environmental Protection Agency (EPA)" (last updated August 14, 2024), http://www.epa.gov/ogc/notices-intent-sue-us-environmental-protection-agency-epa.

73. More than sixty days have passed since Plaintiff served its notice letter on EPA.

## CLAIMS FOR RELIEF

### COUNT I: Failure to Perform a Nondiscretionary Act or Duty to Waive 2023 Cellulosic Biofuel Applicable Volumes

74. The allegations set forth above are incorporated by reference.

75. CAA Section 211(o)(7)(D)(i), 42 U.S.C. § 7545(o)(7)(D)(i), requires that, "[f]or any year for which the projected volume of cellulosic biofuel production is less than the minimum applicable volume established under [42 U.S.C. § 7545(o)(2)(B)], as determined by the Administrator based on the estimate provided under [42 U.S.C. § 7545(o)(3)(A)], not later than November 30 of the preceding calendar year, the Administrator shall reduce the applicable volume of cellulosic biofuel required under [42 U.S.C. § 7545(o)(2)(B)] to the projected volume [of cellulosic biofuel] available during that calendar year."

76. EPA admits that the cellulosic biofuel waiver authorities "remain available." RTC at 9.

77. Plaintiff's December 2023 Petition and March 2024 Update both provided

14

information to EPA showing that the applicable volume of cellulosic biofuel for 2023 (840-million gallons) far exceeded the level of cellulosic biofuel that could reasonably have been projected to have been produced in 2023.

78. Nevertheless, EPA did not "consider AFPM's request to waive volumes under CAA section 211(o)(7)(D) to be properly before the Agency," and did "not address those issues" in denying AFPM's December 2023 Petition and March 2024 Update. AFPM Petition Denial at 4.

79. EPA's failure to waive 2023 applicable volumes of cellulosic biofuel in accordance with 42 U.S.C. § 7545(o)(7)(D) when the statutory criteria for such a waiver are met constitutes a failure "to perform any act or duty . . . which is not discretionary with the Administrator[.]" *See* 42 U.S.C. § 7604(a)(2).

80. EPA's failures have harmed and continue to harm Plaintiff's obligated party members by forcing such members to expend considerable resources to purchase cellulosic biofuel RINs in excess of the amount that EPA could lawfully require for 2023, to undertake RIN acquisition strategies other than those initially planned for 2024 and, in some cases, to force members to "carry over" RIN compliance deficits from 2023 into 2024 when such action may not be the most economic decision for the obligated party.

81. EPA's failure to perform this nondiscretionary act or duty continues to this day.

### COUNT II: Failure to Perform a Nondiscretionary Act or Duty to Make Available for Sale Cellulosic Biofuel Credits

82. The allegations set forth above are incorporated by reference.

83. CAA Section 211(o)(7)(D)(ii) requires that "[w]henever the Administrator reduces the minimum cellulosic biofuel volume under [CAA Section (o)(7)(D)] the Administrator shall make available for sale cellulosic biofuel credits at the higher of $0.25 per

gallon or the amount by which $3.00 per gallon exceeds the average wholesale price of a gallon of gasoline in the United States. Such amounts shall be adjusted for inflation by the Administrator for years after 2008." 42 U.S.C. § 7545(o)(7)(D)(ii).

84. EPA therefore has a statutory obligation "whenever" it reduces the minimum cellulosic biofuel volume to make cellulosic biofuel credits available for sale. *See id.* Section 211(o)(7)(D)(ii) contains no preconditions to the exercise of this authority other than the reduction of the "minimum cellulosic biofuel volume" through utilization of the waiver authority in Section 211(o)(7)(D). *Id.* Thus, at whatever time EPA waives the applicable volume for cellulosic biofuel for any year, it must make cellulosic biofuel credits available.

85. In the Final Rule, EPA confirmed that "should EPA in the future waive the cellulosic volumes under CAA section 211(o)(7)(D), EPA would make cellulosic waiver credits available, consistent with the statute." RTC at 9.

86. EPA's failure to make available cellulosic biofuel credits in accordance with 42 U.S.C. § 7545(o)(7)(D) constitutes a failure "to perform any act or duty . . . which is not discretionary with the Administrator[.]" *See* 42 U.S.C. § 7604(a)(2).

87. EPA's failures have harmed and continue to harm Plaintiff's obligated party members by forcing such members to expend considerable resources to purchase cellulosic biofuel RINs in excess of the amount that EPA could lawfully require for 2023, to be unable to purchase cellulosic biofuel credits that could be used for compliance with 2023 RFS standards, and in some cases, to force members to "carry over" RIN compliance deficits from 2023 into 2024 when such action may not be the most economic decision for the obligated party.

88. EPA's failure to perform this nondiscretionary act or duty continues to this day.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that the Court:

  A.  Declare that EPA has a nondiscretionary duty under CAA Section 211(o)(7)(D)(i)-(ii), 42 U.S.C. § 7545(o)(7)(D)(i)-(ii), to

    (1) "reduce the applicable volume of cellulosic biofuel required to the projected volume available during [the applicable] calendar year" whenever "the projected volume of cellulosic biofuel production is less than the minimum applicable volume established" for an applicable calendar year, and

    (2) "make available for sale cellulosic biofuel credits" for compliance "[w]henever the Administrator reduces the minimum cellulosic biofuel volume";

  B.  Declare that Defendants have failed to perform a nondiscretionary act or duty under 42 U.S.C. § 7545(o)(7)(D) to partially waive 2023 applicable volumes for cellulosic biofuel;

  C.  Order EPA to waive applicable volumes for cellulosic biofuel in 2023 in an amount that is equal to the difference between the 2023 applicable volume for cellulosic biofuel and the actual amount of cellulosic biofuel produced in 2023;

  D.  Order EPA to reduce the 2023 applicable percentage standard for cellulosic biofuel to correspond to the actual volume of cellulosic biofuel produced in 2023;

  E.  Order EPA to make available cellulosic biofuel credits as prescribed in 42 U.S.C. § 7545(o)(7)(D)(ii);

  F.  Order EPA to take such action as is necessary to provide obligated parties complete relief;

  G.  Retain jurisdiction to ensure compliance with the Court's order;

  H.  Award Plaintiff the costs of its participation in this action, including reasonable attorneys' fees; and

    I.    Grant such other relief as the Court deems just and proper.

August 15, 2024                                                      Respectfully submitted,

/s/ Elizabeth B. Dawson
Robert Meyers (No. 294298)
Elizabeth B. Dawson (No. 230818)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

*Attorneys for American Fuel & Petrochemical Manufacturers*