# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS,<br><br>      Plaintiff,<br><br>v.<br><br>LEE ZELDIN,[1] in his official capacity as Administrator of the U.S. Environmental Protection Agency, et al.,<br><br>      Defendants. | Civil Action No. 24-2361 (RBW) |

## ORDER

On August 15, 2024, the plaintiff, American Fuel and Petrochemical Manufacturers ("AFPM"), filed a Complaint against the defendants: (1) the Administrator of the United States Environmental Protection Agency ("EPA" or the "Agency"), and (2) the EPA—collectively, "the defendants"—challenging the EPA's decision not to allow a "partial[] waiver [to the] Renewable Fuel Standard ("RFS") program requirements for cellulosic biofuel for 2023, and to make cellulosic biofuel credits available for that year, as required by [the] Clean Air Act ("CAA"[ or the "Act"]) Section 211(o), 42 U.S.C. § 7545(o)." Complaint for Declaratory and Injunctive Relief ("Compl.") at 1, ECF No. 1.

Under the RFS program, the EPA is required to "determine applicable volumes for each category of renewable fuel[, for 2023 and beyond,] based on a review of the implementation of the RFS program and several statutory[ily enumerated] criteria." Id. ¶ 11 (citing 42 U.S.C.

---

[1] Lee Zeldin is the current Administrator of the Environmental Protection Agency and is therefore substituted for Michael S. Regan as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

7545(o)(2)(B)(ii)).  "[The] EPA [ ] has [a mandatory] 'cellulosic' waiver authority [that] requir[es] [it] to reduce (waive) the applicable volume of cellulosic biofuel if certain conditions are met."  Id. ¶ 26 (emphasis omitted) (quoting 42 U.S.C. § 7545(o)(7)(D)).  According to the plaintiff, the EPA "'set[] the volume requirements [for cellulosic biofuel] such that the mandatory waiver of the cellulosic volume is not anticipated to be triggered in [2023 to 2025].'"  Id. ¶ 38 (quoting Renewable Fuel Standard (RFS) Program: Standards for 2023–2025 and Other Changes, 88 Fed. Reg. 44,477 (July 12, 2023) ("Final Rule")) (second and third alterations in original).  However, because the EPA did not publish the Final Rule until July 2023, "[the] EPA imposed a retroactive obligation on [parties] obligated [to comply with the pertinent portion of the Act] for over half of the 2023 RFS compliance year (January 1, 2023[,] to July 12, 2023)."  Id. ¶ 42.  Consequently, "[EPA-collected] data made clear that there would be a significant cellulosic biofuel shortfall[ based on projections outlined in the Final Rule]" that the plaintiff sought to account for by "petition[ing] the EPA [ ] to exercise [its] mandatory cellulosic biofuel waiver under Section 211(o)(7)(D) [of the Act] and waive a portion of the RFS standards for cellulosic biofuel for the 2023 compliance year."  Id. ¶ 43.  The EPA subsequently denied the plaintiff's petition, see id. ¶ 47; 89 Fed. Reg. 20,961–62 (Mar. 26, 2024), resulting in the initiation of this action, see Compl. at 1.[2]

On October 11, 2024, the Coalition for Renewable Natural Gas (the "Coalition" or the "movant") filed a motion to intervene as a defendant in this case as a matter of right under Federal Rule of Civil Procedure 24(a), or in the alternative, permissively under Federal Rule of Civil Procedure 24(b).  See Motion of Coalition for Renewable Natural Gas for Leave to

---

[2] The plaintiff also notes that it filed a petition for review of the EPA's denial directly to the District of Columbia Circuit Court of Appeals.  See Am. Fuel & Petrochemical Manufacturers v. Env't. Prot. Agency, No. 24-1163 (D.C. Cir.).  That case is currently pending.

Intervene as Defendant Under Federal Rule of Civil Procedure 24 ("Movant's Mot.") ¶¶ 9, 10, ECF No. 9. The movant—a national trade association representing the "vast majority[,]" id. ¶ 4, of renewable natural gas producers in the United States—represents that "[r]enewable natural gas qualifies as cellulosic biofuel under the [RFS] . . . and that the [EPA] . . . projected that the cellulosic biofuel volume requirement for compliance year 2023 will mostly be met with renewable natural gas[,]" id. ¶ 1. According to the movant, "[i]f [the p]laintiff is successful in this action," its members "would suffer economic harms if the cellulosic biofuel volume requirement for 2023 is reduced, and ensuring a market [through] advoca[cy] on behalf of its members' interest[s] . . . [is] germane to [the movant's] purposes as [a] trade association representing the renewable natural gas industry." Id. ¶ 5. Thus, the movant contends that intervention is necessary because it "has a unique and substantial interest in this case that is different and not adequately represented by the existing parties, and its ability to represent these interests will be greatly impaired unless [it] has the opportunity to participate in this litigation." Id. ¶ 7. Upon consideration of the movant's unopposed motion, the Court concludes that it will grant the motion to intervene and permit the movant permissive intervention in this case.[3]

## I. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 24 Motion to Intervene

Federal Rule of Civil Procedure 24(b) provides that "[o]n timely motion, the [C]ourt may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(A)–(B). Permissive intervention is an "'inherently discretionary

---

[3] Because the Court has concluded that the movant may intervene permissively in this case, the Court need not address whether the movant is entitled to intervention as a matter of right under Federal Rule of Civil Procedure 24(b).

3

enterprise,' and the [C]ourt enjoys considerable latitude under [Federal] Rule 24(b)."  Sierra Club v. Van Antwerp, 523 F. Supp. 2d 5, 10 (D.D.C. 2007) (quoting Equal Emp. Opportunity Comm'n v. Nat'l Child.'s Ctr., Inc., 146 F.3d 1042, 1046–48 (D.C. Cir. 1998)).  Moreover, "[t]he D[istrict of ]C[olumbia] Circuit has adopted a flexible reading of Rule 24(b)'s 'claim or defense language,' allowing intervention even in 'situations where the existence of any nominate claim or defense is difficult to find.'"  Ctr. for Biological Diversity v. Env't Prot. Agency, 274 F.R.D. 305, 312 (D.D.C. 2011) (internal quotation marks omitted) (quoting Nat'l Child.'s Ctr., Inc., 146 F.3d at 1046).  However, in exercising its discretion, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  A permissive intervenor must also possess "an independent basis for [the Court to exercise] jurisdiction."  Nat'l Child.'s Ctr., Inc., 146 F.3d at 1046.

While the Court must have a basis to exercise jurisdiction over a permissive intervenor's claims, "[i]t remains, however, an open question in this Circuit whether Article III standing is required for [a party to acquire] permissive intervention."  In re Endangered Species Act Section 4 Deadline Litig.-MDL No. 2165 v. Salazar, 704 F.3d 972, 980 (D.C. Cir. 2013).  The Circuit in recent opinions has only further obscured the issue by, in one instance, "denying a party's motion for permissive intervention on the ground that the proposed intervenor lacked standing[,]" Mayor & City Council of Balt. v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 23-cv-3762 (RDM), 2024 WL 3082271, at *7 (D.D.C. June 21, 2024) (citing Yocha Dehe Wintun Nation v. U.S. Dep't of the Interior, 3 F.4th 427, 431–32 (D.C. Cir. 2021)), but in another instance concluding that "[w]hen multiple petitioners bring claims jointly, only one petitioner needs standing to raise each claim[,]" Food & Water Watch v. Fed. Energy Reg.

4

Comm'n, 28 F.4th 277, 284 (D.C. Cir. 2022) (quoting City of Bos. Delegation v. Fed. Energy Reg. Comm'n, 897 F.3d 241, 250 (D.C. Cir. 2018)).

The Supreme Court has opined that "[a]n intervenor as of right must independently demonstrate Article III standing if it pursues relief that is broader or different from the party invoking a court's jurisdiction," Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania, 140 S. Ct. 2367, 2379 n.6 (2020) (citing Town of Chester, N.Y. v. Laroe Ests., Inc., 137 S. Ct. 1645, 1651 (2017)), but inquiring into the proposed intervenor's standing is improper if that intervenor seeks the same relief as a party with standing, see id. Although the Supreme Court's conclusion in Little Sisters appears at odds with the Circuit's holding in Yocha Dehe, "[the Circuit in Yocha Dehe] did not consider whether the proposed intervenor sought the same relief as the existing parties or discuss Little Sisters." Signal Peak Energy, LLC v. Haaland, No. 24-cv-366 (TSC), 2024 WL 3887386, at *4 (D.D.C. Aug. 21, 2024). Despite "the D.C. Circuit [ ] not [directly] address[ing] this tension[,]" id., members of this Court have adopted the reasoning in Little Sisters and concluded that defendant-intervenors need not demonstrate standing where they do not seek to invoke the court's jurisdiction, see, e.g., Env't Integrity Project v. Wheeler, No. 20-cv-1734 (KBJ), 2021 WL 6844257, at *2 (D.D.C. Jan. 27, 2021) (defendant-permissive intervenors not invoking the court's jurisdiction are not required to demonstrate standing); see also Child.'s Health Def. v. Ctrs. for Disease Control & Prevention, No. 23-cv-431 (TNM), 2024 WL 3521593, at *5 n.3 (D.D.C. July 24, 2024) (same).

## II. ANALYSIS

The movant advances three reasons why the Court should allow it to permissively intervene in this case: (1) that "the intervention motion is timely"; (2) that "the defenses raised by [the m]ovant[] are based on common issues of law or fact"; and (3) that "intervention will not

unduly delay the proceedings nor will the original parties to this case be prejudiced by intervention." Movant's Mot., Exhibit ("Ex.") 3 (Memorandum in Support of Motion of Coalition for Renewable Natural Gas for Leave to Intervene as Defendant Under Federal Rule of Civil Procedure 24 ("Movant's Mem.") at 11, ECF No. 9-3. The Court will address each position in turn.[4]

The Court first considers the timeliness of the movant's motion. In considering the timeliness of a motion to intervene, the Court should weigh "all the circumstances, especially . . . [the] time [that] elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in [the] case." Aristotle Int'l, Inc. v. NGP Software, Inc., 714 F. Supp. 2d 1, 19 (D.D.C. 2010) (internal quotation marks omitted) (quoting United States v. AT&T, 642 F.2d 1285, 1295 (D.C. Cir. 1980)). Here, the motion to intervene was filed less than two months after the Complaint was filed, see Compl. at 1, and four days before the defendants filed their answer, see Answer at 1, ECF No. 11. And similar to the defendants in this case, the movant seeks to intervene to prevent the plaintiff from obtaining a court order rescinding the Final Rule already issued by the EPA, see Movant's Mot. ¶¶ 2–3, to maintain the price of renewable natural gas in the market, see id. ¶ 5. Considering all of these facts collectively, the Court concludes that the movant's motion was timely filed.

Next, the Court considers whether there are adequate common questions of law or fact alleged by the movant. "[C]ourts have interpreted this requirement . . . liberally," In re Vitamins

---

[4] The Court notes that the movant has established a basis for the Court's jurisdiction because it is "not ask[ing] the [ ] [C]ourt to exercise jurisdiction over an additional claim on the merits, but rather to exercise a power that it [ ] has," Nat'l Childrens Ctr., Inc., 146 F.3d at 1047, namely, to review actions or inactions by the EPA in regards to the Act, see 42 U.S.C. § 7604(a) ("The [federal] district courts shall have jurisdiction . . . to order the [EPA] Administrator to perform such act or duty . . . [or] compel . . . agency action. . . .").

6

Antitrust Litig., No. Misc. 99-197, 2001 WL 34088808, at *4 (D.D.C. Mar. 19, 2001), so as to not "strictly . . . preclude permissive intervention[,]" Nuesse v. Camp, 385 F.2d 694, 704–05 (D.C. Cir. 1967).  Here, the movant easily satisfies this requirement because it merely "seeks to defend volumes established by EPA and its decision not to use the cellulosic biofuel waiver authority[,]" which is directly at issue in this case.  Movant's Mot., Ex. 3 (Movant's Mem.) at 11; see generally Compl.  Therefore, the Court concludes that the movant has demonstrated common questions of law and fact that merit permissive intervention.  See, e.g., Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt, 331 F.R.D. 5, 14 (D.D.C. 2019) (finding that the movants satisfied the common question of law and fact requirement of Federal Rule 24(b) where the movants sought to intervene to defend agency action that protected their economic interests).

Finally, the Court considers whether permissive intervention will unduly delay proceedings or otherwise prejudice the parties already in this case.  Here, none of the parties will be prejudiced by intervention.  As the Court has indicated, the movant moved to intervene before the defendants filed an answer to the Complaint—thereby moving in advance of the Court entering a briefing schedule or holding an initial scheduling conference to determine how the parties wish to proceed in this case without causing any delay.  See, e.g., Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am., 272 F.R.D. 26, 30 n.3 (D.D.C. 2010) (citing Fed. R. Civ. P. 24(b)) (finding that permissive intervention is proper where "the [parties] do[] not argue . . . that the timing of the petitioner's motion to intervene, filed before the scheduling of the initial status hearing[] has prejudiced its case").  Moreover, the Court appreciates that the movant "can provide the Court with information regarding the renewable natural gas industry that may assist the Court in understanding the issues in this litigation[,] and the potential broader implications of its rulings."  Movant's Mot., Ex. 3 (Movant's Mem.) at 11.

And, this could possibly assist the Court in expeditiously resolving this case. Therefore, the Court concludes that the movant's intervention in this case will not unduly delay or prejudice the existing parties.

Accordingly, the Court concludes that the requirements of Federal Rule 24(b) have been satisfied and the movant shall be permitted to intervene in this case.[5]

Wherefore, it is hereby

**ORDERED** that the Motion of Coalition for Renewable Natural Gas for Leave to Intervene as Defendant Under Federal Rule of Civil Procedure 24, ECF No. 9, is **GRANTED**. It is further

**ORDERED** that the Defendant-Intervenor's Answer, ECF No. 9-1, is **ACCEPTED AS FILED** and the Clerk of the Court shall forthwith file it as a separate entry on the docket. It is further

**ORDERED** that to ensure the expeditious resolution of this action, and because this qualifies as an exempted case under Local Civil Rule 16.3(b), on or before March 5, 2025, the parties shall file a joint proposed briefing schedule governing further proceedings.

---

[5] To reiterate, although it is an "open question" in this Circuit regarding whether permissive intervention requires a movant to demonstrate Article III standing, the Court presumes that the movant has standing—i.e., competitor standing—to intervene in this case. "It is axiomatic that Article III requires a showing of injury-in-fact, causation, and redressability." Deutsche Bank Nat'l Trust Co. v. Fed. Deposit Ins. Co., 717 F.3d 189, 193 (D.C. Cir. 2013). Here, assuming arguendo that the movant must demonstrate Article III standing even for permissive intervention where it is not "invok[ing] [the C]ourt's jurisdiction," Little Sisters, 140 S. Ct. at 2379 n.6, the movant has standing because of the economic interests it seeks to protect by intervening in this case, see Movant's Mot., Ex. 3 (Movant's Mem.) at 6 ("[E]asing the requirements under the [RFS] . . . program will benefit competitors of members of [the m]ovant[]."); Am. Petroleum Inst. v. Johnson, 541 F. Supp. 2d 165, 177 (D.D.C. 2008) ("The [Supreme] Court routinely recognizes probable economic injury resulting from agency actions that alter competitive conditions as sufficient to satisfy the [Article III 'injury-in-fact' requirement].") (quoting 3 Richard Pierce, Administrative Law Treatise § 16.4 at 1122 (4th ed. 2002)); Am. Fuel & Petroleum Mfrs.s v. Env't Prot. Agency, 3 F.4th 373, 379 (D.C. Cir. 2021) ("With injury established, the rest of the standing inquiry ordinarily falls into place: the increased competition is caused by the agency's action and redressed by restoring the regulatory status quo ante."). Accordingly, to the extent a permissive intervenor under Federal Rule 24(b) must demonstrate Article III standing, the Court concludes that the movant has done so here.

**SO ORDERED** this 19th day of February, 2025.

                                                  REGGIE B. WALTON
                                                  United States District Judge