# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICAN FUEL & PETROCHEMICAL           )
MANUFACTURERS.,                          )
      Plaintiff,                     )
                                     )
v.                                       )
                                     )     1:24-cv-02361-RBW
                                     )
LEE ZELDIN,                              )
    Administrator, U.S. Environmental    )
    Protection Agency, *in his official* )
    *capacity*, AND U.S.                 )
    ENVIRONMENTAL PROTECTION             )
    AGENCY,                              )
      Defendants.                    )
_____  )

### DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS CROSS-MOTION TO DISMISS OR, IN THE ALTERNTIVE, FOR SUMMARY JUDGMENT ON REMEDY AND RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

STATEMENT OF FACTS AND LEGAL FRAMEWORK .............................................................. 3

    I.    Statutory and Regulatory Framework ................................................................................. 3

        A.    EPA's "Set Authority" .............................................................................................. 3

        B.    EPA's "Cellulosic Waiver Authority" ....................................................................... 4

        C.    Annual Percentage Standards .................................................................................... 4

        D.    Compliance ................................................................................................................ 4

    II.    EPA's Rulemaking Setting the 2023 Volumes ................................................................... 6

    III.    The D.C. Circuit Decision Upholding the 2023 Cellulosic Biofuel Volume ..................... 6

    IV.    Plaintiff's Administrative Petition ....................................................................................... 7

STANDARD OF REVIEW ............................................................................................................. 7

    I.    Rule 12(b)(1) ..................................................................................................................... 7

    II.    Rule 56 ............................................................................................................................... 7

ARGUMENT .................................................................................................................................. 8

    I.    This Court Lacks Jurisdiction over Plaintiff's Claims. ....................................................... 8

        A.    This Court Lacks Jurisdiction Because EPA Had No Duty to Consider the Application of the Cellulosic Waiver Authority for the 2023 Cellulosic Biofuel Volume by a Date-Certain Deadline. ............................................................................... 9

        B.    This Court Lacks Jurisdiction Because Plaintiff Could Only Have Brought this Challenge in the D.C. Circuit and within 60 Days of EPA's Rule Setting the 2023 Cellulosic Biofuel Volumes. ....................................................................................... 12

    II.    In the Alternative, the Court Should Grant EPA Summary Judgment on Remedy. ........... 14

CONCLUSION ............................................................................................................................. 16

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*AFPM v. EPA*,
    937 F.3d 559 (D.C. Cir. 2019) ................................................................ 3

*Am. Road & Transp. Builders Ass'n v. EPA*,
    865 F. Supp. 2d 72 (D.D.C. 2012) ...................................................... 13

*Ams. for Clean Energy v. EPA*,
    864 F.3d 691 (D.C. Cir. 2017) ............................................................ 11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................ 8

*Ctr. for Biological Diversity v. EPA*,
    141 F.4th 153 (D.C. Cir. 2025) .......................................... 7, 10, 11, 12

*Davis v. Mich. Dep't of Treasury*,
    489 U.S. 803 (1989) .......................................................................... 11

*Ellis v. Holy Comforter Saint Cyprian Cmty. Action Grp.*,
    153 F. Supp. 3d 338 (D.D.C. 2016) ..................................................... 7

*FTC v. Manager, Retail Credit Co.*,
    515 F.2d 988 (D.C. Cir. 1975) ........................................................... 11

*Growth Energy v. EPA*,
    5 F.4th 1 (D.C. Cir. 2021) .................................................................. 13

*Kean for Cong. Comm. v. FEC*,
    398 F. Supp. 2d 26 (D.D.C. 2005) ....................................................... 7

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) .......................................................................... 11

*Maggio v. Zeitz*,
    333 U.S. 56 (1948) ............................................................................ 15

*Nat. Res. Def. Council, Inc. v. Train*,
    510 F.2d 692 (D.C. Cir. 1974) ........................................................... 15

*Rushing v. Leavitt*,
    No. 03-1969, 2005 WL 555415 (D.D.C. Mar. 7, 2005) ..................... 15

*Sierra Club v. Browner*,
    130 F. Supp. 2d 78 (D.D.C. 2001) ................................................................. 15

*Sierra Club v. Johnson*,
    444 F. Supp. 2d 46 (D.D.C. 2006) ................................................................. 15

*Sierra Club v. Pruitt*,
    238 F. Supp. 3d 87 (D.D.C. 2017) ................................................................... 8

*Sierra Club v. Wheeler*,
    956 F.3d 612 (D.C. Cir. 2020) ..................................................................... 8, 9

*Sinclair Wyo. Refin. Co. LLC v. EPA*,
    101 F.4th 871 (D.C. Cir. 2024) ...................................................................... 11

*Zook v. McCarthy*,
    52 F.Supp.3d 69 (D.D.C. 2014) ....................................................................... 8

**Statutes**

42 U.S.C. § 7545(*o*) ....................................................................................... 1, 3

42 U.S.C. § 7545(*o*)(1)(B) .............................................................................. 3, 5

42 U.S.C. § 7545(*o*)(1)(D) .............................................................................. 3, 5

42 U.S.C. § 7545(*o*)(1)(E) .............................................................................. 3, 5

42 U.S.C. § 7545(*o*)(1)(F) ................................................................................. 3

42 U.S.C. § 7545(*o*)(1)(J) .................................................................................. 3

42 U.S.C. § 7545(*o*)(2) ...................................................................................... 3

42 U.S.C. § 7545(*o*)(2)(B) ................................................................................. 9

42 U.S.C. § 7545(*o*)(2)(B)(i) ........................................................................... 3, 5

42 U.S.C. § 7545(*o*)(2)(B)(i)(III) ....................................................................... 9

42 U.S.C. § 7545(*o*)(2)(B)(i)(IV) ...................................................................... 4

42 U.S.C. § 7545(*o*)(2)(B)(ii) .................................................................... 4, 9, 10

42 U.S.C. § 7545(*o*)(2)(B)(iv) ................................................................ 4, 10, 11, 12

42 U.S.C. § 7545(*o*)(3)(B)(i) ................................................................................. 4

42 U.S.C. § 7545(*o*)(3)(B)(ii) ........................................................................... 4, 5

42 U.S.C. § 7545(*o*)(5) ...................................................................................... 5, 6

42 U.S.C. § 7545(*o*)(5)(D) ..................................................................................... 6

42 U.S.C. § 7545(*o*)(7)(D) ............................................................... 1, 7, 9, 10, 12

42 U.S.C. § 7545(*o*)(7)(D)(i) .................................................................................. 4

42 U.S.C. § 7545(*o*)(7)(D)(ii) ................................................................................. 4

42 U.S.C. § 7607(b)(1) ................................................................................. 2, 7, 13

42 U.S.C. § 7607(d) ..................................................................................... 15, 16

Pub. L. No. 109-58, 119 Stat. 594 (2005) ................................................................ 3

Pub. L. No. 110-140, 121 Stat. 1492 (2007) ............................................................ 3

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................ 8

**Regulations**

40 C.F.R. § 80.1401 (2023) ....................................................................................... 5

40 C.F.R. § 80.1405(c) (2023) ................................................................................... 4

40 C.F.R. § 80.1407(a) (2023) ................................................................................... 5

40 C.F.R. § 80.1426 (2023) ....................................................................................... 5

40 C.F.R. § 80.1426(a) .............................................................................................. 5

40 C.F.R. § 80.1426(a) .............................................................................................. 5

40 C.F.R. § 80.1426(e) .............................................................................................. 5

40 C.F.R. § 80.1427(a)(1) .......................................................................................... 6

40 C.F.R. § 80.1427(a)(3)(i) ............................................................................... 5

40 C.F.R. § 80.1427(a)(5) ................................................................................... 6

40 C.F.R. § 80.1427(b) ....................................................................................... 6

40 C.F.R. § 80.1428(b) (2023) ........................................................................... 5

40 C.F.R. § 80.1428(c) ....................................................................................... 6

**Federal Registers**

88 Fed. Reg. 44468 (July 12, 2023) ............................................................ 6, 12

## INTRODUCTION

Nearly two years after EPA issued its rulemaking—which the D.C. Circuit already has upheld in pertinent part—setting the volume of cellulosic biofuel refiners and importers must incorporate into transportation fuel in 2023 under the Clean Air Act's Renewable Fuel Standard Program ("RFS"), 42 U.S.C. § 7545(*o*), Plaintiff American Fuel and Petrochemical Manufacturers now asks *this* Court to force EPA to change that same volume. Plaintiff argues that, when the volume of cellulosic biofuel refiners must incorporate into transportation fuel in a calendar year exceeds the volume EPA projects will be produced in that year, EPA has a non-discretionary duty to apply its cellulosic waiver authority under 42 U.S.C. § 7545(*o*)(7)(D) to reduce the required volume of cellulosic biofuel and issue cellulosic biofuel credits. But this Court lacks jurisdiction over Plaintiff's claims for at least two reasons. And, even if it has jurisdiction, EPA is entitled to summary judgment regarding the appropriate remedy for any purported failure to apply its waiver authority.

First, this Court lacks jurisdiction because EPA had no date-certain deadline by which it had to apply its cellulosic waiver authority to the 2023 volumes. Absent a date-certain deadline, EPA lacks any non-discretionary duty that this Court has jurisdiction to enforce. Plaintiff's assertion that EPA had a non-discretionary duty to reduce the 2023 cellulosic volume by November 30, 2022, is simply incorrect. The statute does require EPA, by no later than November 30 of each year, to determine whether the volume of cellulosic biofuel set for the following year exceeds the volume of cellulosic biofuel that EPA projects will be produced in that year and, if so, to lower the obligated volume down to the volume projected to be produced. But, beginning in 2023, the statute *also* requires EPA to set the volume of cellulosic biofuel *without* using the cellulosic waiver authority. Because EPA did not set the 2023 volumes until July 2023, eight months after the timeframe in which any mismatch in the volumes set and the projected

1

production could have triggered a requirement to apply the cellulosic waiver authority, no non-discretionary duty ever arose. Accordingly, this Court lacks jurisdiction to consider Plaintiff's claims.

Second, even if November 30, 2022, could qualify as a date-certain deadline to apply the cellulosic waiver authority to the 2023 volume, Plaintiff waived any challenge to EPA's purported failure to use that authority and this Court lacks jurisdiction to consider it now. EPA published a final rule setting the 2023 cellulosic biofuel volume in July 2023, *after* the alleged date-certain deadline to apply the cellulosic waiver authority. Under § 7607(b)(1) of the Clean Air Act, jurisdiction to consider challenges to actions EPA takes in final rules—including setting the 2023 cellulosic biofuel volume without using the cellulosic waiver authority—lies exclusively in the D.C. Circuit. Moreover, any such challenge must be brought within 60 days after publication of the final rule. Although Plaintiff challenged (unsuccessfully) the 2023 cellulosic biofuel volume before the D.C. Circuit, Plaintiff failed to raise any claim that EPA was required to use the cellulosic waiver authority or that it had failed to do so. Accordingly, Plaintiff waived any such challenge before the appropriate court, and this Court lacks jurisdiction to consider it now.

In the alternative, if the Court finds it has jurisdiction to consider Plaintiff's claims, EPA is entitled to summary judgment on remedy. The *only* remedy Plaintiff can obtain in this deadline suit is a new deadline by which *EPA* must exercise its cellulosic waiver authority. Application of the cellulosic waiver authority now, after all obligated parties have already complied with the required cellulosic biofuel volume, would be an extraordinarily complex undertaking. Accordingly, if the Court finds that it has jurisdiction to consider Plaintiff's claims, EPA requests that the Court set a deadline of no earlier than October 31, 2026, for the Agency to act.

## STATEMENT OF FACTS AND LEGAL FRAMEWORK

**I.      Statutory and Regulatory Framework**

In 2005 and again in 2007, Congress amended the Clean Air Act to establish the RFS program, codified at 42 U.S.C. § 7545(*o*). *See* Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594; Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. 1492.

The RFS program requires refiners and importers of transportation fuel to incorporate increasing volumes of renewable fuel to into the United States' transportation fuel supply each year through 2022 and requires EPA to set volumes after 2022 based on an analysis of specific statutory factors. *AFPM v. EPA*, 937 F.3d 559, 568 (D.C. Cir. 2019); 42 U.S.C. § 7545(*o*)(2)(B). Renewable fuel is made from renewable biomass and is "used to replace or reduce the quantity of fossil fuel present in a transportation fuel." 42 U.S.C. § 7545(*o*)(1)(J).

The statute addresses four nested categories of renewable fuel: cellulosic biofuel, biomass-based diesel, advanced biofuel, and total renewable fuel. Cellulosic biofuel and biomass-based diesel are both subsets of advanced biofuel, which also includes any other renewable fuels that meet certain regulatory requirements. *Id.* § 7545(*o*)(1)(B), (D), (E). Total renewable fuel is the broadest category. It includes all three other categories as well as conventional renewable fuels. *Id*. § 7545(1)(F).

**A. EPA's "Set Authority"**

Beginning in 2023, the statute directs EPA to set all fuel volumes for 2023 and subsequent years "based on a review of the implementation of the program . . . and an analysis of" a series of factors. *Id.* § 7545(*o*)(2)(B)(ii). With respect to cellulosic biofuel, the statute explicitly requires that EPA must set the annual volume "based on the assumption that [EPA] will not need to issue a [cellulosic] waiver . . . . under paragraph (7)(D)." *Id*. § 7545(*o*)(2)(B)(iv).

### B. EPA's "Cellulosic Waiver Authority"

The cellulosic waiver authority, § 7545(*o*)(7)(D)(i), requires EPA to "determine[]" by November 30 each year the volume of cellulosic biofuel that EPA projects will be produced the following year is less than the volume of cellulosic biofuel that refiners and importers must incorporate into transportation fuel under the RFS program.  If EPA determines that the projected volume of cellulosic biofuel production will be insufficient to meet the required volumes, EPA exercises its cellulosic waiver authority.  This authority requires EPA (1) to reduce the required volume to the volume that EPA projects will be produced for that calendar year and (2) to issue cellulosic biofuel credits.  *Id*. § 7545(o)(7)(D)(i)-(ii)

### C. Annual Percentage Standards

While the applicable volumes reflect the nationwide use of renewable fuel, the renewable fuel obligation imposes requirements on specific obligated parties (refiners and importers of gasoline and diesel) to meet their fair share of those volumes. The renewable fuel obligation is expressed as a set of percentage standards that EPA calculates by dividing the applicable volumes for each renewable fuel type by the projected total volume of gasoline and diesel that will be used in the United States that year, with certain adjustments. *Id*. § 7545(*o*)(3)(B)(ii); 40 C.F.R. § 80.1405(c) (2023).

### D. Compliance

Refiners and importers of transportation fuel use the percentage standards for each fuel type to calculate their individual renewable volume obligation by multiplying the relevant percentage standard by the volume of their own production or importation of gasoline and diesel in that year. 42 U.S.C. § 7545(*o*)(3)(B)(ii); 40 C.F.R. § 80.1407(a) (2023). This renewable volume obligation represents the share of the nationally applicable renewable fuel volume that the obligated party is responsible for meeting.

Each obligated party demonstrates compliance with its individual obligation by obtaining and "retir[ing]" a sufficient number of compliance credits in an annual compliance demonstration. 40 C.F.R. § 80.1427(a) (2023). Those credits, known as Renewable Identification Numbers ("RINs"), represent volumes of renewable fuels used in the United States. 42 U.S.C. § 7545(*o*)(5); 40 C.F.R. §§ 80.1401, 80.1426 (2023). An obligated party can obtain RINs by blending renewable fuels into transportation fuel or by purchasing RINs from others. 40 C.F.R. §§ 80.1426(a), (e), 80.1428(b) (2023).

Because the volume requirements are nested,  an obligated party may use cellulosic biofuel and biomass-based diesel RINs not only to satisfy obligations for those fuels, but also to satisfy the advanced biofuel obligations, and they may also use those RINs and other advanced biofuels RINs to satisfy the total renewable fuel obligations. 42 U.S.C. § 7545(*o*)(1)(B), (D), (E), (*o*)(2)(B)(i); 40 C.F.R. § 80.1427(a)(3)(i). Thus, for example, an obligated party may use the same cellulosic biofuel RIN to satisfy its cellulosic biofuel, advanced biofuel, and total renewable fuel obligations.

Parties that acquire excess RINs in one year may sell such RINs or they can "carry over" the RINs and use them to meet up to 20% of their compliance obligations the following year.[1] 42 U.S.C. § 7545(*o*)(5); 40 C.F.R. §§ 80.1427(a)(1), (5), 80.1428(c). Additionally, obligated parties may carry a compliance deficit forward to the next year, which it must then satisfy together with the next year's compliance obligation. 42 U.S.C. § 7545(*o*)(5)(D); 40 C.F.R. § 80.1427(b).

---

[1] These excess RINs are colloquially known as "carryover RINs" and the sum of all RINs collectively carried over by individual parties from a prior year is colloquially known as the "carryover RIN bank."

## II.    EPA's Rulemaking Setting the 2023 Volumes

On July 12, 2023, EPA published a rulemaking in the Federal Register that, *inter alia*, set

the 2023, 2024, and 2025 applicable volumes and percentage standards for cellulosic biofuel,

biomass-based diesel, advanced biofuel, and total renewable fuel pursuant to EPA's "set

authority."  88 Fed. Reg. 44468, 44475-521 (July 12, 2023).

The following table shows the resulting established volumes:

**2023-2025 Rule Volume Requirements** (billion gallons)

| Fuel | 2023 | 2024 | 2025 |
|------|------|------|------|
| Cellulosic biofuel | 0.84 | 1.09 | 1.38 |
| Biomass-based diesel | 2.82 | 3.04 | 3.35 |
| Advanced biofuel | 5.94 | 6.54 | 7.33 |
| Total renewable fuel | 20.94 | 21.54 | 22.33 |

88 Fed. Reg. at 44470.[2]

## III.    The D.C. Circuit Decision Upholding the 2023 Cellulosic Biofuel Volume

On September 11, 2023, Plaintiff, along with other petitioners, challenged the 2023

cellulosic biofuel volume and various other aspects of EPA's rulemaking before the D.C. Circuit

in a set of consolidated cases decided in June 2025.  *Ctr. for Biological Diversity v. EPA*, 141

F.4th 153 (D.C. Cir. 2025).  Although Plaintiff challenged the cellulosic biofuel volume that EPA

had set in that rule, Plaintiff did *not* assert EPA erred by failing to apply the cellulosic waiver

authority to reduce volumes to the projected volume available under 42 U.S.C. § 7545(*o*)(7)(D).

*Id*. at 187-88; DEX 1 at 21-23.

The D.C. Circuit rejected Plaintiff's argument that EPA had set the cellulosic biofuel

volume too high, explaining that EPA had "keyed [the cellulosic biofuel volume requirements] to

---

[2] Volumes are expressed as ethanol-equivalent volumes on an energy-content basis, except for biomass-based diesel, which is expressed in physical gallons of biomass-based biodiesel. 88 Fed. Reg. 44470 tbl. I.A.1-1 n.a.

the amount of that fuel EPA thought would be produced in the relevant years" based on a "reasonably . . . projected growth rate."  *Id*. at 187-88.

## IV.  Plaintiff's Administrative Petition

On December 22, 2023, Plaintiff petitioned EPA to apply its cellulosic waiver authority under § 7545(*o*)(7)(D) to reduce the cellulosic biofuel volumes.  DEX 2.  Plaintiff reiterated its request in a March 4, 2024, "update" to its petition.  DEX 3.  On March 15, 2024, EPA denied Plaintiff's petition, explaining that the Clean Air Act does not authorize administrative petitions asking EPA to exercise its cellulosic waiver authority.  DEX 4 at 4.

## STANDARD OF REVIEW

## I.  Rule 12(b)(1)

On a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), "the plaintiff bears the burden of establishing the jurisdiction of the Court."  *Kean for Cong. Comm. v. FEC*, 398 F. Supp. 2d 26, 31 (D.D.C. 2005).  A plaintiff must establish jurisdiction by a preponderance of the evidence.  *Ellis v. Holy Comforter Saint Cyprian Cmt. Action Grp.*, 153 F. Supp. 3d 338, 340 (D.D.C. 2016).  Particularly when jurisdiction is raised in combination with a motion for summary judgment, the court may consider materials outside the pleadings as it deems appropriate to decide whether it has jurisdiction in the case.  *Kean for Cong. Comm.*, 398 F. Supp. 2d at 31.

## II.  Rule 56

A motion for summary judgment should be granted under Rule 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" on which it bears the burden of proof.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986).  If the Court finds that it has jurisdiction because EPA had a non-discretionary duty to apply its cellulosic waiver authority to the 2023 cellulosic biofuel volume by a date-certain deadline, there is no dispute that EPA did not use that authority.  The only issue to be resolved on summary judgment would be the appropriate remedy.  *See, e.g.*, *Sierra Club v. Pruitt*, 238 F. Supp. 3d 87, 88 (D.D.C. 2017).

## ARGUMENT

### I.    This Court Lacks Jurisdiction over Plaintiff's Claims.

This Court lacks jurisdiction over Plaintiff's claims for two reasons.  First, Plaintiff alleges that EPA has failed to perform a non-discretionary duty to exercise its cellulosic waiver authority to partially reduce the cellulosic biofuel volumes and issue cellulosic biofuel credits.  Compl. Counts I & II.  But as the D.C. Circuit has explained, the Clean Air Act's waiver of sovereign immunity is conditional and *only* gives the district court jurisdiction to consider such a claim if the statutory duty is "clear-cut and requires [EPA] to act by a date-certain deadline."  *Sierra Club v. Wheeler*, 956 F.3d 612, 616 (D.C. Cir. 2020) (internal quotations omitted); *accord Zook v. McCarthy*, 52 F.Supp.3d 69, 73 (D.D.C. 2014).  Because EPA had no duty to apply the cellulosic waiver authority for the 2023 cellulosic biofuel volumes by a date-certain deadline, Plaintiff's claims should be dismissed.

Second, if the Court were to find that the Clean Air Act contains a date-certain deadline by which EPA was required to exercise the cellulosic waiver authority, the only possible deadline is November 30, 2022.  Because that obligation would have arisen before EPA set the 2023 volumes in its July 12, 2023 rule, Plaintiff could only have challenged that purported failure through its D.C. Circuit petition for review of that rule.  Having now lost that challenge, Plaintiff cannot now raise *new* arguments regarding EPA's rule in this Court because the Clean Air Act only affords

jurisdiction over such claims in the D.C. Circuit, and only within 60 days of the publication of the rule.

**A. This Court Lacks Jurisdiction Because EPA Had No Duty to Consider the Application of the Cellulosic Waiver Authority for the 2023 Cellulosic Biofuel Volume by a Date-Certain Deadline.**

The interplay between (a) the requirement that EPA set volumes post-2022 under 42 U.S.C. § 7545(*o*)(2)(B)(ii) *without* using the cellulosic waiver authority under § 7545(*o*)(7)(D) and (b) the timeframe in which EPA set the 2023 cellulosic volume, precludes the existence of any statutory "date-certain deadline" by which EPA was required to apply the cellulosic waiver authority for 2023. EPA thus had no non-discretionary duty and this Court lacks jurisdiction to consider Plaintiff's claim. *Sierra Club*, 956 F.3d at 616.

Congress set statutory volumes for cellulosic biofuel from 2010 through 2022. 42 U.S.C. § 7545(*o*)(2)(B)(i)(III). Recognizing the limitations of its ability to foretell the growth in cellulosic biofuels decades into the future, Congress required EPA each year by November 30 to assess whether the volume of cellulosic biofuel projected to be produced the following year would be sufficient to meet the volumes set under § 7545(*o*)(2)(B) for that year. *Id*. § 7545(*o*)(7)(D). If the projected production fell short, Congress required EPA to reduce the cellulosic biofuel volume set by statute to the volume EPA projected would be produced and issue cellulosic credits. *Id*. For example, for compliance year 2022, EPA had to compare the volume of cellulosic biofuel that EPA projected would be produced in 2022 to the volume Congress set in the statute by November 30, 2021, and to reduce the 2022 cellulosic biofuel volumes and issue cellulosic biofuel credits if the projected production fell short.

But, beginning in 2023, Congress requires EPA to set all renewable fuel volumes, including cellulosic biofuel, based on a review of a number of statutory factors at least *fourteen* months before the beginning of the compliance year, *i.e.*, by October 31, 2021, for compliance

year 2023. *Id*. § 7545(*o*)(2)(B)(ii). When EPA sets those volumes, Congress specifically

instructs that "the applicable volume of cellulosic biofuel established by [EPA under §

7545(*o*)(2)(B)(ii)] shall be based on the assumption that [EPA] will not need to issue a waiver for

such years under paragraph (7)(D)." *Id*. § 7545(*o*)(2)(B)(iv). Thus, at the time EPA sets volumes

using § 7545(*o*)(2)(B)(ii), EPA *cannot* apply the cellulosic waiver. *Ctr. for Biological Diversity*,

141 F.4th at 185 ("Congress required EPA to set the cellulosic biofuel volume at a level that

would not require it to issue a waiver reducing those volumes in the future, thereby limiting the

volumes to what is reliably attainable.").

When EPA timely sets the volumes, there is a 13-month window in which the Agency

may be required to apply the cellulosic waiver authority if the projected volume of cellulosic

biofuel falls short of the volumes EPA set. For example, if EPA had timely set the 2023 volumes

on October 31, 2021, there would have been a window from October 31, 2021, through

November 30, 2022, in which EPA may have been required to use the cellulosic waiver authority

to reduce the cellulosic biofuel volumes and issue cellulosic biofuel credits if EPA's analysis of

the statutory factors had resulted in it setting a higher cellulosic biofuel volume in 2021 than the

volume that the Agency projected in 2022 would be produced in 2023.

If, however, EPA does not set volumes until *after* the end of the timeframe in which it

must waive those volumes,[3] the "single best meaning" of the statute is that *only* EPA's obligation

to set the cellulosic biofuel volume *without* using the cellulosic waiver authority is triggered. *See*

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). In this specific context, only this

reading effectuates the structure of the statute and gives meaning to Congress's mandate in §

---

[3] The D.C. Circuit repeatedly has held that EPA may promulgate late RFS volume requirements, so long as EPA reasonably considers and mitigates burdens on obligated parties caused by the lateness. *See, e.g. Ctr. for Biological Diversity*, 141 F.4th at 61; *Sinclair Wyo. Refin. Co. LLC v. EPA*, 101 F.4th 871, 887 (D.C. Cir. 2024); *Ams. for Clean Energy v. EPA*, 864 F.3d 691, 718 (D.C. Cir. 2017).

7545(*o*)(2)(B)(iv) that EPA set post-2022 volumes without using the cellulosic waiver authority. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").  Similarly, this reading is the only reading that honors the language in § 7545(*o*)(2)(B)(iv) addressing the specific interplay between the cellulosic waiver authority and EPA's authority to set volumes post-2022 rather than the more general language in § 7545(*o*)(7)(D) regarding how the cellulosic waiver authority applies to volumes across the program as a whole.  *See FTC v. Manager, Retail Credit Co.*, 515 F.2d 988, 993-94 (D.C. Cir. 1975) ("The principle that a specific statutory provision prevails over a more general one is established beyond question.").

Here, EPA set the 2023 cellulosic biofuel volume seven months after the end of the window in which the cellulosic waiver authority could be triggered, thus precluding any non-discretionary duty to apply the cellulosic waiver authority.  The duty to use that authority could only have been triggered between the date EPA set the 2023 volumes using the § 7545(*o*)(2)(B)(ii) authority and November 30, 2022.  42 U.S.C. § 7545(*o*)(7)(D).  Because EPA did not set the 2023 volumes until July 12, 2023, seven months after that window, EPA properly set the 2023 cellulosic biofuel volumes pursuant to § 7545(*o*)(2)(B)(iv)'s mandate to not use the cellulosic waiver authority.  *See* 88 Fed. Reg. at 44477-79.  And indeed, the D.C. Circuit has already upheld the 2023 cellulosic biofuel volume EPA set and specifically noted the unavailability of the cellulosic waiver authority in setting those volumes.  *Ctr. for Biological Diversity*, 141 F.4th at 185, 187-88 (noting that "Congress required EPA to set the cellulosic biofuel volume at a level that would not require it to issue a waiver reducing those volumes in the future, thereby limiting the volumes to what is reliably attainable" and upholding the 2023

"cellulosic biofuel volume requirements, which were keyed to the amount of that fuel EPA thought would be produced in the relevant years.").

Because EPA did not set the volumes until seven months after the end of the window in which a non-discretionary duty to apply the cellulosic waiver authority could be triggered, no non-discretionary duty to apply that authority ever arose. Statutorily, EPA's duty to apply the cellulosic waiver authority under § 7545($o$)(7)(D) collapsed into EPA's duty to set the cellulosic biofuel volume without use of the waiver under § 7545($o$)(2)(B)(iv). And, indeed, EPA explained in its rulemaking that it set the 2023 volumes "at the projected volume available . . . ," 88 Fed. Reg. 44477-79, *i.e.*, at the level to which EPA would have reduced the cellulosic biofuel volume even if the waiver had been available.

Plaintiff argues that November 30, 2022, is the applicable date-certain deadline that triggered EPA's non-discretionary duty to apply the cellulosic waiver authority. Pl. Mem. at 18-19. But Plaintiff fails to even address, much less explain, how EPA could possibly have been required to use the waiver by that date when EPA was, at the same time, setting volumes under a statutory mandate *not* to use the waiver. *See id.* November 30, 2022, thus cannot be considered a date-certain deadline for waiver of the 2023 cellulosic biofuel volumes or issuance of cellulosic credits.

Because Plaintiff has failed to identify a valid date-certain deadline by which EPA was required to apply the cellulosic waiver, Plaintiff has failed to establish a non-discretionary duty this Court could order EPA to take. *See Sierra Club*, 956 F.3d at 616. On this basis alone, the Court should dismiss this matter for lack of jurisdiction.

**B. This Court Lacks Jurisdiction Because Plaintiff Could Only Have Brought this Challenge in the D.C. Circuit and within 60 Days of EPA's Rule Setting the 2023 Cellulosic Biofuel Volumes.**

If Plaintiff is correct that November 30, 2022, constitutes a date-certain deadline by which

EPA was required to apply its cellulosic waiver authority, this Court still lacks jurisdiction because Plaintiff could only bring its claims as part of its D.C. Circuit challenge to EPA's July 2023 rule setting the 2023 cellulosic biofuel volumes. Having failed to raise any such argument in the D.C. Circuit, Plaintiff cannot now attempt a second bite at the apple by asking this Court to rethink the 2023 cellulosic biofuel volume that the D.C. Circuit already upheld. *Ctr. for Biological Diversity*, 141 F.4th at 187-88.

The Clean Air Act requires parties to challenge all aspects of a rule in the D.C. Circuit within 60 days of the rule's publication in the Federal Register, unless the challenge is "based solely on grounds arising after such sixtieth day." 42 U.S.C. § 7607(b)(1). Pursuant to this statutory provision, "only the courts of appeals may review final action taken under the Clean Air Act" and cases brought in district courts must be "dismiss[ed] . . . for lack of subject matter jurisdiction." *Am. Road & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 75 (D.D.C. 2012). Moreover, the Act's 60-day "time bar is jurisdictional . . . ." *Growth Energy v. EPA*, 5 F.4th 1, 12-13 (D.C. Cir. 2021).

Plaintiff argues that EPA had a duty to use its cellulosic waiver authority by November 30, 2022, Pl. Mem. at 18-19, well before EPA issued its July 2023 rule setting the 2023 cellulosic biofuel volumes, 88 Fed. Reg. 44468. Plaintiff thus was required to bring any assertion that EPA was required to use this authority to alter the cellulosic biofuel volumes as part of its challenge to the July 12, 2023 rule. Because Plaintiff failed to challenge that aspect of the rule in its D.C. Circuit litigation, it waived any such challenge. *See* DEX 1 at 21-23. And, because Plaintiff's challenge here is, at bottom, an assertion that EPA improperly set the 2023 cellulosic biofuel volumes in the July 12, 2023 rule, this Court lacks jurisdiction to consider Plaintiff's claim, both because it is time-barred and because it is in the wrong court. On this basis too, the Court should

dismiss this matter for lack of jurisdiction.

## II.    In the Alternative, the Court Should Grant EPA Summary Judgment on Remedy.

If the Court finds that EPA had a non-discretionary duty to apply the cellulosic waiver authority for 2023 by November 30, 2022, despite the statute's mandate that EPA set such volumes without using that authority, EPA does not dispute that it did not take such action by November 30, 2022, and still has not taken it.  The sole question then is the proper deadline the Court should order.  Because retroactive application of the cellulosic waiver authority after all parties have complied with their RFS obligations is extraordinarily complicated, the Court should order a deadline no earlier than October 31, 2026.

At the outset, although Plaintiff has sought not only an order compelling EPA to apply its cellulosic waiver authority, but also to "grant other appropriate relief," this Court can *only* order a deadline by which EPA must exercise its cellulosic waiver authority.  As jurists in this District repeatedly have explained, "[u]nder the [Clean Air Act], the Court can only order EPA to take nondiscretionary actions required by the statute itself.  The Act expressly limits the Court's authority in this regard and does not envision other types of relief."  *Sierra Club v. Browner*, 130 F. Supp. 2d 78, 90 (D.D.C. 2001); *accord Rushing v. Leavitt*, No. 03-1969, 2005 WL 555415, at *3 (D.D.C. Mar. 7, 2005) ("the Court cannot dictate *how* the Administrator must act").

With respect to the specific deadline the court sets, a court may "afford an agency additional time for compliance, where it is convinced by the official involved that he has in good faith employed the utmost diligence in discharging his statutory responsibilities."  *Sierra Club v. Johnson*, 444 F. Supp. 2d 46, 52-53 (D.D.C. 2006) (cleaned up).  Moreover, "[t]he sound discretion of an equity court does not embrace enforcement through contempt of a party's duty to comply with an order that calls him 'to do an impossibility.'"  *Nat. Res. Def. Council, Inc. v.*

*Train*, 510 F.2d 692, 713 (D.C. Cir. 1974) (quoting *Maggio v. Zeitz*, 333 U.S. 56, 59 (1948)).
Here, retroactively reducing cellulosic biofuel volumes and issuing cellulosic biofuel credits for
2023 at this point, after the compliance deadline has passed and all regulated parties have already
complied with the deadline would be complicated and time-consuming.  DEX 5 ¶¶ 14, 16.

 As EPA explains in the accompanying declaration, modifying volumes after compliance
has closed is "an extremely complex process because compliance with one year's volumes for a
particular fuel type impacts not only that volume in that specific year, but also impacts the other
volumes for that year and the volumes for the following year."  DEX 5 ¶¶ 16-17.  Deciding how
best to accomplish this requires analysis of a number of overlapping issues, which would take
EPA time to assess.  *Id*. ¶¶ 16-22.

 Once EPA identifies a potential course of action, EPA must draft a notice of proposed
rulemaking and seek comment on that proposal pursuant to the requirements of 42 U.S.C. §
7607(d).  DEX 5 ¶ 18.  That step requires EPA to draft the public notice, including an in-depth
analysis of costs and impacts and obtain approvals within EPA for the proposal.  *Id*.  Then EPA
must send the proposal to the Office of Management and Budget where it will be distributed to
other federal agencies for inter-agency review.  *Id*.  EPA must then address the comments
received in inter-agency review before finalizing the proposed rule and transmitting it to the
Office of Federal Register for publication.  *Id*.

 EPA must then accept public comment on the proposed rule and hold a public hearing.  *Id*.
42 U.S.C. § 7607(d).  The proposal must remain open for comment for an additional 30 days

following the public hearing.  DEX 5 ⁋ 18.  Once the comment period closes, EPA must analyze the comments and determine the best course of action in light of the comments received.  *Id*.

Once EPA decides on a course of action, it must draft a final rulemaking and respond to the public comments.  *Id*.  EPA must then send the draft to the Office of Management and Budget to be circulated again for inter-agency review.  *Id*.  EPA then must assess and incorporate comments from inter-agency review into its rule before finalizing the final rule and transmitting it to the Office of the Federal Register for publication.  *Id*.

This rulemaking process is complex and time-consuming.  Moreover, EPA will need to undertake this process while its RFS program staff are also working on a number of other rulemakings that also have statutory deadlines.  *Id*. ⁋⁋ 23-29.  For example, EPA must set the volumes for 2026 and 2027, with statutory deadlines of October 31, 2024 (which EPA already missed) and October 31, 2025.  *Id*. ⁋ 24.  Due to the highly technical nature of this program and the interconnection of the 2023 cellulosic biofuel volumes with other parts of the program, only the RFS program staff could undertake a rulemaking to change the 2023 volumes.  *Id*. ⁋ 28.

Because of the complexity of this rulemaking, the statutory requirements for undertaking the rulemaking, and the other demands on the RFS program staff's time, EPA anticipates it could complete the rulemaking by October 31, 2026.  *Id*. ⁋ 30.  Accordingly, if the Court finds it has jurisdiction to impose a deadline on EPA, EPA requests that the deadline not be before October 31, 2026.

## CONCLUSION

For the foregoing reasons, EPA respectfully requests the Court dismiss Plaintiff's complaint in its entirety for lack of jurisdiction.  In the alternative, EPA requests that its motion for summary judgment on remedy be granted and Plaintiff's motion for summary judgment be denied.

Respectfully submitted,

ADAM R.F. GUSTAFSON
ACTING ASSISTANT ATTORNEY GENERAL
Environment and Natural Resources Division

/s/ Kimere J. Kimball
KIMERE J. KIMBALL (T.A.)
USDOJ ENRD/EDS
P.O. Box 7611
Washington, DC  20044-7611
Telephone:  (202) 514-2285
*E-mail:  Kimere.kimball@usdoj.gov*
*Counsel for Defendant*

August 4, 2025

Of Counsel:
Rosemary Kaban
U.S. Environmental Protection Agency
Office of General Counsel
Air and Radiation Law Office